IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL AWOSIKA,
   *Petitioner*,

v.

UNITED STATES OF AMERICA,
   *Respondent*.

Crim. No. ELH-17-00311
Related Civil No. ELH-18-3425

**MEMORANDUM OPINION**

This Memorandum Opinion resolves a Motion To Vacate, Set Aside, Or Correct Sentence, filed by Michael Awosika, the self-represented Petitioner, pursuant to 28 U.S.C. § 2255. ECF 50. Awosika argues that he received ineffective assistance of trial counsel. The government filed an opposition (ECF 55), with exhibits. Thereafter, Awosika filed a "Motion To Correct And Amend 2255" (ECF 59), seeking to add a claim concerning the selection of the grand jury. The government has filed a response in opposition. ECF 60.

No hearing is necessary to resolve the Petition. For the reasons that follow, I shall deny the Petition.

**I.    Factual Summary**

On June 13, 2017, a grand jury sitting in the District of Maryland indicted Awosika on multiple charges, including one count of carjacking on April 8, 2017, in violation of 18 U.S.C. § 2119; one count of possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c); and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). ECF 1.

Awosika entered a plea of guilty to the carjacking offense on May 8, 2018, pursuant to a plea agreement. ECF 38; ECF 41. The plea was entered under Fed. R. Crim. P. 11(c)(1)(C), by

which the parties agreed to a sentence of 15 years of incarceration. ECF 38, ¶¶ 9, 10. That sentence corresponded to the statutory maximum for the offense. ECF 38, ¶ 3. However, it was well below the statutory maximum of life imprisonment, to which defendant was exposed in connection with the firearm offense charged under 18 U.S.C. § 924(c). Moreover, if Awosika was convicted of the carjacking, as well as the firearm offense under 18 U.S.C. § 924(c), he would have faced a mandatory minimum sentence of ten years, consecutive to any other sentence.

The Statement of Facts included with the Plea Agreement (ECF 38 at 8) detailed the events of April 8, 2017, during the carjacking of "A.C.", who was taking her 5-month-old grandson out of the vehicle when the defendant entered the front seat of the vehicle. *Id.* A Baltimore City Fire Department Captain observed Awosika driving down the road "in a dangerous manner." *Id.* The defendant fired two shots at the Captain's vehicle. *Id.*

Both in writing (ECF 38 at 9) and orally, defendant stipulated to the facts set forth by the government. *See* ECF 51 (guilty plea Transcript); ECF 55-2 (same). Awosika, who was under oath (ECF 55-2 at 2), agreed with the accuracy of the government's factual summary. *Id.* at 34. And, he expressly stated that he committed the crime as summarized by the government, and was pleading guilty freely and voluntarily, because he was guilty, as charged. *Id.*

During the plea colloquy, the Court inquired of the defendant whether he had been treated recently for any mental health problems. ECF 55-2 at 4. Awosika advised that he was taking an antidepressant medication. *Id.* at 5. The Court expressly asked defendant if there was "anything about this medication that somehow clouds your thinking?" *Id.* at 6. The defendant responded: "No, Ma'am." *Id.* In response to an inquiry from the Court, defense counsel advised that she was satisfied her client was mentally able to proceed. *Id.* at 5. Moreover, the defendant indicated his

belief that he was able to proceed. *Id.* And, the Court observed that the defendant appeared "alert and oriented." *Id.* at 6.

At the guilty plea proceeding, the Court also asked the Petitioner whether he had any "complaints whatsoever" about his attorney's representation. ECF 55-2 at 7. Awosika responded, "No." *Id.* Moreover, he answered in the affirmative that he was "fully satisfied with the services" of his attorney. *Id.* at 8.

Sentencing was held on July 3, 2018. ECF 44. In accordance with the terms of the C plea, the Court sentenced the defendant to a total term of 180 months' imprisonment as to Count One. ECF 45.

As noted, Petitioner contends that he received ineffective assistance of counsel. In particular, he claims he told his attorney that he was "insane," yet his attorney told the judge that defendant understood the guilty plea proceeding when, in fact, he did not. ECF 50 at 2. He has also added a complaint about the selection of the grand jury.

## II. Legal Standards

### A.

Section 2255(a) of Title 28 of the United States Code, under which Awosika filed his Petition, provides relief to a prisoner in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack.

Under 28 U.S.C. § 2255(b), the court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ." *See*, *e.g.*, *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Courts have determined that a hearing is not necessary

where "the motion . . . fail[s] to allege sufficient facts or circumstances upon which the elements of constitutionally deficient performance might properly be found [or] where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion." *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *accord United States v. McGill*, 11 F.3d 223, 225-26 (1st Cir. 1993). On the other hand, a hearing is generally "required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to resolve this issue." *United States v. Robertson*, 219 Fed. App'x 286, 286 (4th Cir. 2007); *see also United States v. Ray*, 547 Fed. App'x 343, 345 (4th Cir. 2013).

In reviewing the Petition, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (same). Nevertheless, in my view, no hearing is necessary to resolve claims in the Petition.

**B.**

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ____ U.S. ____, 137 S. Ct. 759, 775 (2017). Ineffective assistance of counsel is a well recognized

basis for relief under § 2255. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. Winbush*, ___ F.3d ___, 2019 WL 1770010, at *2 (4th Cir. April 23, 2019); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017).

First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 2019 WL 1770010, at *2; *Powell*, 850 F.3d at 149; *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013). As the *Padilla* Court said, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task."

The first prong is known as the "performance prong," which relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Powell*, 850 F.3d at 149. The central question is whether "an attorney's representation amounted to incompetence

under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

As the Supreme Court recently reiterated, the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775; *see also Powell*, 850 F.3d at 149. "The lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). Notably, "the *Strickland* standard must be applied with scrupulous care," *Richter*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "A reasonable probability is a

probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. However, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court...to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

In the case at bar, Awosika entered into a plea agreement with the government, by which he pleaded guilty to one count of a multi-count indictment. *Hill*, 474 U.S. 52, is noteworthy. There, the Supreme Court explained that "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

*Hooper v. Garraghty*, 845 F.2d 471 (4th Cir. 1988), also provides guidance. In that case, the Fourth Circuit described a petitioner's burden in the context of a post-guilty plea claim of ineffective assistance of counsel. The Court said, *id.* at 475 (quoting *Hill*, 474 U.S. at 59): "When

a defendant challenges a conviction entered after a guilty plea, [the] 'prejudice' prong of the [*Strickland*] test is slightly modified. Such a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Accord Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1294-99 (4th Cir. 1992). Moreover, when, as here, a criminal defendant claims ineffective assistance of counsel after pleading guilty, he is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields*, 956 F.2d at 1299; *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977); *United States v. LeMaster*, 403 F.3d 216, 221 (4th Cir. 2005).

### III. Discussion

As the guilty plea transcript reflects, defendant, while under oath, indicated that he had reviewed the charges with his lawyer; had no complaints about his lawyer's representation of him; there was nothing he wanted his lawyer to do for him that his lawyer failed to do; and he was fully satisfied with the legal services provided to him by his lawyer. Further, he assured the Court that his medication did not cloud his thinking.

As the government observes, "the Petitioner asks this Court to believe that he lied in his written plea agreement and during the plea colloquy when he repeatedly stated that he understood the proceedings." ECF 55 at 8. The comprehensive Rule 11 proceeding reflects that Petitioner entered a knowing and voluntary plea. His claims to the contrary are contradicted by his statements made under oath at the Rule 11 proceeding.

In *LeMaster*, 403 F.3d at 221, the Fourth Circuit reiterated: "'[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . "carry a strong presumption of verity[.]"'" (citations omitted). The Court explained that "courts must be able to rely on the

8

defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *Id.* *See also Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *United States v. White*, 366 F.3d 291, 295-96 (4th Cir. 2004); *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003). Notably, statements of a defendant, made under oath, "present 'a formidable barrier in any subsequent collateral proceedings.'" *White*, 366 F.3d at 296 (quoting *Blackledge*, 431 U.S. at 74).

In addition, the Amendment, challenging the grand jury selection process, is devoid of merit. As the government notes (ECF 60 at 2), there is a presumption of regularity that pertains to grand jury proceedings. *United States v. Brothers Const. Co. of Ohio*, 219 F.3d 300, 314 (4th Cir. 2000). Petitioner has not identified any improper grand jury conduct, nor has he posited a violation of his rights. Rather, he baldly asserts that the grand jurors were not lawfully selected in accordance with Rule 6, and that his lawyer was ineffective for failing to challenge the selection process.

## IV. Conclusion

For the reasons set forth above, I shall deny the § 2255 Petition.

## V. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).[1]

---

[1] The denial of a COA by the district court does not preclude Petitioner from seeking a COA from the appellate court.

9

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, ___ U.S. ___, 137 S. Ct. at 773. Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

As indicated, a COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has not made a substantial showing of the denial of his constitutional rights. Therefore, I decline to issue a COA.

An Order follows.

Date: May 9, 2019

/s/
Ellen L. Hollander
United States District Judge